UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE M. STURGILL,                    Case No. 18-10487

               Plaintiff,          Linda V. Parker
v.                                       United States District Judge

COMMISSIONER OF SOCIAL                   Stephanie Dawkins Davis
SECURITY,                                United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 14, 17)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On February 12, 2018, plaintiff Michelle M. Sturgill filed the instant suit.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Linda V. Parker referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability and disability insurance benefits.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 14, 17).

B.      Administrative Proceedings

Sturgill filed an application for a period of disability and disability insurance

benefits on August 1, 2014, alleging disability beginning on February 20, 2013.

(Tr. 20).[1]  She later amended the alleged onset date to March 10, 2013.  The claims

were initially disapproved by the Commissioner on March 9, 2015.  (*Id.*).  Sturgill

requested a hearing and on December 6, 2016, she appeared, with counsel, before

Administrative Law Judge ("ALJ") Crystal L. White-Simmons, who considered

the case *de novo*.  (Tr. 20-27).  In a decision dated February 24, 2017, the ALJ

found that plaintiff was not disabled.  (Tr. 26-27).  The ALJ's decision became the

final decision of the Commissioner when the Appeals Council, on January 9, 2018,

denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to
the same are identified as "Tr."

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Sturgill, born May 23, 1963, was 49 years old on the alleged disability onset date.  (Tr. 25).  She has past relevant work as a telephone sales consultant.  (*Id.*).  She reported completing school through the 11th grade (Dkt. 187) but also testified at the hearing that she stopped attending in the 9th or 10th grade.  (Tr. 40).   She claims that she is prevented from working because of limitations in lifting things, bending over, and squatting due to her the herniated and bulging discs in her back.  She also says her medication wipes her out, and she suffers from anxiety.  (Tr. 45-46).

The ALJ applied the five-step disability analysis and found at step one that Watson had not engaged in substantial gainful activity since March 10, 2013, the alleged onset date and meets the insured status requirements of the Social Security Act through June 30, 2017.  (Tr. 22).  At step two, the ALJ found that Sturgill's breast cancer, right adhesive capsulitis, right trigger finger, and herniated lumbar disc with radiculopathy were "severe" within the meaning of the second sequential step.  (*Id.*).  However, at step three, the ALJ found no evidence that her impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 23).

3

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should have no concentrated exposure to excessive vibration or unprotected heights. She is limited to frequent reaching, including overhead, and handling with the right upper extremity. She is limited to frequent operation of foot controls and frequent pushing and pulling with the bilateral lower extremities. She requires a sit/stand option after 30 minutes.

(Tr. 23). At step four, the ALJ found that Sturgill was unable to perform any past relevant work. (Tr. 25). At step five, the ALJ denied Sturgill benefits because she found that there were jobs that exist in significant numbers in the national economy that she can perform. (Tr. 25-26).

B.   Plaintiff's Claims of Error

Sturgill argues that the ALJ made an incorrect RFC determination for a number of reasons. First, she says the ALJ should not have given any weight to the State agency reviewing physician, Dr. Nguyen, because he did not review a complete record. (Dkt. 14, at p. 11-12). She contends that at the time of the physician's review, the record contained no evidence about her back and shoulder

problems which she contends demonstrates that she is disabled under the regulations.

Second, Sturgill contends that, based on the medical evidence, she is unable to perform light work as the term is defined in the regulations on a sustained basis. (*Id.* at p. 12-13).  Third, she contends that the ALJ erroneously relied on her refusal to undergo orthopedic surgery to discount her credibility.  (*Id.* at p. 14).  She states that she is not required to undergo surgery in order to obtain Social Security disability benefits.  (*Id.* at p. 15).  Finally, after citing a number of medical records from the administrative record, Sturgill argues that the ALJ's determination that her subjective complaints were not entirely consistent with the medical evidence is not supported by the record.  (*Id.* at p. 18).

C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ properly relied in part on Dr. Nguyen's expert opinion.  The Commissioner states that there is no requirement that an opinion be based on the complete record.  (Dkt. 17, at Pg ID 725-27).  The ALJ in this case expressly noted that there was evidence post-dating Dr. Nguyen's opinion and expressly discounted the opinion on account of the later evidence.  (*Id.* at Pg ID 727).

The Commissioner next argues that the ALJ was not obligated to accept Sturgill's subjective complaints of pain.  The Commissioner states that the ALJ

correctly noted that Sturgill declined back surgery and that such information is useful in assessing limitations.  (*Id.* at Pg ID 728).  Further, the ALJ properly noted the surgery declination as one factor among many.  (*Id.* at Pg ID 729).

Regarding the ALJ's assessment of Sturgill's subjective complaints, the Commissioner argues that the ALJ cited medical evidence that is inconsistent with Sturgill's complaints.  The Commissioner contends that Sturgill's citations to evidence consistent with her complaints is merely an invitation for the Court to re-weigh the evidence and Sturgill does not explain how the evidence undermines the ALJ's findings.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals

and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920. Essentially, the ALJ must determine whether: (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform. (*Id*.). "If the Commissioner makes a dispositive finding at

any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

## C.    Analysis and Conclusions

The undersigned has reviewed the ALJ's RFC assessment regarding

Sturgill's physical limitations, together with the record evidence and concludes that

the ALJ did not err.  To begin with, Sturgill did not provide any medical opinion

from the relevant period that establishes any functional limitations arising from any

physical impairments.  It is unequivocally the claimant's burden to establish the

existence of a disability.  *See* 20 C.F.R. § 404.1512(c) ("You must provide medical

evidence showing that you have an impairment(s) and how severe it is during the

time you say that you are disabled.  You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments. This determination is usually made at stages one through four [of the sequential process for determining whether a claimant is disabled], *when the claimant is proving the extent of his impairments.*") (emphasis added).  Here, although the record contains a diagnosis of breast cancer (in remission), right trigger finger, right adhesive capsulitis, and significant canal stenosis, plaintiff offers no evidence, besides her own statements,  about the functional impact of the impairments.  *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder ... does not automatically entitle plaintiff to the receipt of benefits.  Rather, in order to qualify for the receipt of benefits ... plaintiff must show that she was disabled by her dysthymic disorder."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.").

Further, having reviewed the evidence relied upon by the ALJ and the other medical evidence in the record, the undersigned concludes that the RFC

determination is supported by substantial evidence.  20 C.F.R. § 404.1545 (2012)

provides that the Residual Functional Capacity is "the most you can still do despite

your limitations."  In fashioning the RFC, the ALJ relied on the medical evidence

as well as Sturgill's own statements about her daily activities and ability to

function.

It appears that Sturgill is a breast cancer survivor whose cancer is in

remission.  (Tr. 47, 604).  She underwent surgeries to remove cancer followed by a

battery of chemotherapy and radiation treatments.  (Tr. 404, 514, 518).  The record

does not reflect any specific functional limitations during her cancer treatment.

For example, in November 2015 her oncologist was changing her chemotherapy

medication because the medication she was on at the time caused hot flashes and

hoarseness in her voice; the physician did not note functional limitations as a result

of the medications.  (Tr. 604).  The State agency physician, Dr. Nguyen, reviewed

the record as of the date of opinion, March 2015.  The records he reviewed

included a large portion of Sturgill's cancer records.  (Tr. 74-75).  Dr. Nguyen

concluded, based on that record, that Sturgill was capable of engaging in light

work.[2]  (Tr. 78-79).  Thus, there would appear to be substantial evidence to

conclude that the RFC determination accounts for her past history of breast cancer.

---

[2] Sturgill contests the ALJ's weighing of this opinion because Dr. Nguyen did not have
the benefit of the majority of the medical records on her shoulder, hand, and back impairments.
Sturgill does not contest that Dr. Nguyen did not have the benefit of much of her cancer records.

Regarding Sturgill's problems with her right upper extremity—her shoulder and trigger finger issues—it appears that these conditions are well-maintained by steroid injections.  An April 2015 MRI of the right shoulder revealed a moderate-sized partial tear and small bursal surface thickness tear.  (Tr. 533).  A June 2016 x-ray of the right shoulder revealed normal examination but with osteopenia versus permeative changes in the intramedullary cavity of the humeral shaft.  (Tr. 564). In October 2015 she reported to her orthopedic physician that she had received an injection in the right shoulder and right hand which were helpful in reducing the pain as well as the contracture in her third and fourth digit trigger fingers.  (Tr. 569).  Indeed, in July 2015 it was noted that she experienced immediate relief of symptoms after an injection to her shoulder.  (Tr. 518).  In May 2016, she reported that she was unable to extend her right hand and was showing fourth-digit trigger finger, and was unable to move her right shoulder.  (Tr. 592).  On physical examination her oncologist noted her right hand fourth digit trigger finger was in flexed position and she could not move her right shoulder without causing severe distress or pain.  (*Id.*).  By June 2016, one month later, Sturgill reported that after injections to the right shoulder and right hand again, she was able to mobilize her shoulder and right hand much better.  (Tr. 586).   Her physical examination that

---

Thus, it is not inappropriate for the ALJ to have relied on Dr. Nguyen's opinion to the extent of the impairments reflected in the records he reviewed.

day revealed almost full range of motion in her shoulder and hand.  (Tr. 587).

Further, Sturgill testified at the administrative hearing that the pain in her shoulder

subsides for 3-4 weeks after her steroid injections, but that she feels pain in the

shoulder if she uses it too much.  (Tr. 49).  Because injections appear to provide

relief and mobility in her right shoulder and right hand, the ALJ's determination

that she is not disabled by these conditions is supported by substantial evidence.

The ALJ accounted for these impairments by limiting Sturgill's use of the right

upper extremity to only frequent reaching, including overhead, and handling.  (Tr.

23).

  While Sturgill's back impairment causes her pain and tenderness in the low

back, the medical evidence does not contradict the RFC finding because there is no

evidence of functional limitations caused by back pain that exceed those stated in

the RFC.  In a July 2014 full body bone scan, degenerative changes were noted in

the lower lumbar spine.  (Tr. 387).  Another full body bone scan showed the same

in April 2015.  (Tr. 535).  Sturgill reported in July 2015 that she had been

experiencing pain in the lower left buttocks that had been shooting down her leg

since April.  (Tr. 514).  A CT scan of the lumbar spine in April 2015 revealed

persistent grade ½ anterolisthesis of L4-5 and mild degenerative lumbar

spondylosis with bilateral neural foraminal narrowing at L4-L5 and L5-S1.  (Tr.

537).  She was diagnosed with significant canal stenosis with evidence of

anterolisthesis of L4 over L5 as well as minor disc bulging at L1 and L2 based on a

January 2016 MRI.  (Tr. 555).

However, Sturgill did not provide a medical opinion attributing any

functional limitations to the diagnosis.  Instead, the record contains Sturgill's

subjective complaints and treatment records.[3]  Sturgill testified that the pain in her

back would decrease from 8 or 9 out of 10 to 4 out of 10 with medication if she

was not on her feet too much or did not have a "full day" the day before.  (Tr. 50-

51).  She also testified to her physical abilities: she can lift 8-10 pounds with both

hands, she can walk on a treadmill for 10-15 minutes, and she can sit for 30

minutes and stand for 30 minutes a time.  (Tr. 57-58).  Accordingly, the ALJ

provided for a sit/stand option after 30 minutes and limited the use of her feet.  (Tr.

23).  Although in her function report she stated that when she bathes herself she is

unstable and slow (Tr. 197); that she cannot prepare meals because she is too weak

and unstable (Tr. 198); and that she is unable to do any of her hobbies such as

gardening, bowling, and working out, except for reading and watching television

(Tr. 200), she also stated that she can attend to her own personal care, fold clothes,

water the grass for a short period of time, handwash a small load of dishes (Tr.

_____

[3] There is also a reviewing opinion from the State agency physician which will be addressed below.  As Sturgill points out, this physician did not have the opportunity to review much of her back and shoulder records, and thus did not provide an opinion on limitations caused by those impairments.

198), and drive though not after chemotherapy treatment (Tr. 199).  Thus, while she alleged limited activities and weakness, her statements do not in and of themselves demonstrate that she is incapable of light work.  Seemingly undermining her statements that she is too weak and unstable are treatment records showing 5/5 strength in her lower extremities and normal gait, as discussed below.

Sturgill's treatment records overall provide substantial evidence in support of the ALJ's determination.  It is clear that her back impairment causes some limitation, but the record does not suggest that she is so limited that she cannot perform light work.  For example, on physical examination in June 2016, before receiving injections to her low back, she had tenderness on palpation of the lumbar spine and right paravertebral muscles.  Her strength was 5/5 in both lower extremities.  (Tr. 558).  Though she was identified as a surgical candidate, she received additional treatment options of physical therapy or epidural injections, and ultimately received the injections.  (*Id.*).  She also complained of back pain to her oncologist in June 2016.  Her oncologist noted on physical examination "somewhat limited or stilted movement" with her low back pain and that she exhibited facial grimacing.  (Tr. 587).  This same record also noted that Sturgill had almost full range of motion of the right shoulder as well as her right hand, which she had previously experienced difficulty flexing and expanding.  During that month, before getting any injections to her low back, she reported back pain

that was intermittent depending on her activities; i.e. lying down alleviated her pain and walking sometimes helped but after half a block she would stop walking because of increased back pain.  (Tr. 557).

During her July2016 physical exam she was again noted to have tenderness in her low back and pain in her hips with rotations.  (Tr. 555).  She reported to her oncologist that month that she has the most difficulty with her back when trying to go from sitting to standing, but that she "feels better when she actually gets moving."  (Tr. 580).  Her doctor noted that she was able to get onto the examination table without assistance.  (Tr. 580-81).  She received injections to her low back in August and September 2016.  (Tr. 610, 615).  She presented again to her orthopedist on October 18, 2016 complaining of low back pain and bilateral lower extremity radiculopathy.  (Tr. 633).  After undergoing the two injections, she said the injections only took the "edge off" her pain for about two weeks and her back pain then was 9 out of 10 at that time.  (*Id.*).  At this visit she continued treating with injections and inquired about physical therapy.  (Tr. 634).  Of the records noting strength, both noted 5/5 strength in her lower extremities, (Tr. 558, 570), and both records noting gait reflected steady or normal gait.  (Tr. 409, 587).

While these treatment records demonstrate physical impairment in her back and perhaps some limitation, they do not themselves suggest that Sturgill cannot sustain light work activity.  Sturgill does not point to any functional limitations or

suggest what additional functional limitations should be included in the RFC,
except to state that her "adverse effects of radiation and chemotherapy plus her
shoulder and back impairments would not allow standing and or walking 6 hours
out of 8 hours or frequently lifting 20 pounds."[4]  (Dkt. 14, at p. 12-13).  As noted
earlier, this Court may not reverse the Commissioner's decision merely because it
disagrees or because "there exists in the record substantial evidence to support a
different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833
(6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).
Substantial evidence is "more than a scintilla of evidence but less than a
preponderance; it is such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at
475.  "The substantial evidence standard presupposes that there is a 'zone of
choice' within which the Commissioner may proceed without interference from the
courts."  *Felisky v. Bowen* 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted)
(citing *Mullen*, 800 F.2d at 545).  For these reasons, the undersigned concludes that
the ALJ's RFC determination is supported by substantial evidence.

In the view of the undersigned, the ALJ did not err in her treatment of the
State agency physician's opinion.  On March 6, 2015, Dr. Nguyen rendered a

---

[4] Light work requires frequent lifting of 10, and involves lifting no more than 20 pounds
at a time.  Light work does not require frequent lifting of 20 pounds.  20 C.F.R. § 404.1567(b).

reviewing opinion.  The ALJ gave the opinion limited weight because it was

inconsistent with the objective medical evidence in the record as discussed by the

ALJ.  (Tr. 25).  Sturgill contends that the ALJ should have given Dr. Nguyen's

opinion no weight at all because he did not have the benefit of medical records

after March 2015, the period in which the majority of the records regarding her

right upper extremity and back impairments were created.  First, the undersigned

notes that in giving the opinion limited weight, the ALJ certainly did not rely on

the opinion.  Rather, the ALJ appears to have recognized that Dr. Nguyen did not

have the benefit of reviewing a large part of the medical record and thus disagreed

with the ultimate conclusion.  *See Kepke v. Comm'r of Soc. Sec.*, 636 Fed. Appx.

625, 632 (6th Cir. 2016) ("Here, the ALJ's decision indicates that he subjected Dr.

Balunas's opinion to at least some scrutiny, because the ALJ disagreed with Dr.

Balunas's assessment of Kepke's limitations in her activities of daily living and

social functioning, and applied even greater restrictions in this area than Dr.

Balunas opined were appropriate."). Second, "[a]n ALJ may consider the opinion

of a non-examining physician designated by the Secretary in determining whether

a claimant has medically determinable impairments."  *Neal v. Astrue*, 2009 WL

2135792, at *7 (M.D. Tenn. July 16, 2009) (citing *Reynolds v. Secretary*, 707 F.2d

927, 930 (6th Cir. 1983)).  "'State agency medical and psychological consultants ...

are highly qualified physicians [and] psychologists ... who are also experts in

Social Security disability evaluation,' and whose findings and opinions the ALJ

'must consider ... as opinion evidence.'" *Lee v. Comm'r of Soc. Sec.*, 529 Fed.

Appx. 706, 712 (6th Cir. 2013) (citation omitted); 20 C.F.R. § 416.9279(e)(2)(I).

Thus, it was not at all improper for the ALJ to at least consider Dr. Nguyen's

opinion.  Further, as discussed above, Dr. Nguyen did have the benefit of many of

Sturgill's cancer treatment records and concluded on that evidence that she could

perform light work.  Substantial evidence—regarding her cancer—supports this

conclusion.

> ### 2.    Credibility

"Credibility determinations concerning a claimant's subjective complaints

are peculiarly within the province of the ALJ." *See Gooch v. Sec'y of Health &*

*Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  "Upon review, [the court must]

accord to the ALJ's determinations of credibility great weight and deference

particularly since the ALJ has the opportunity, which [the court] d[oes] not, of

observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 476 (6th Cir. 2003).  Thus, an ALJ's credibility determination will

not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379

(6th Cir. 2001).  The ALJ is not required to accept the testimony of a claimant if it

conflicts with medical reports, the claimant's prior statements, the claimant's daily

activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain or other

symptoms is in issue, after the ALJ finds a medical condition that could reasonably

be expected to produce the claimant's alleged symptoms, s/he must consider "the

entire case record, including the objective medical evidence, statements and other

information provided by treating or examining physicians . . . and any other

relevant evidence in the case record" to determine if the claimant's claims

regarding the level of her pain are credible.  SSR 96-7p, 1996 WL 374186, at *1;

*see also* 20 C.F.R. § 416.929.  "Consistency between the plaintiff's subjective

complaints and the record evidence tends to support the credibility of the

[plaintiff], while inconsistency, although not necessarily defeating, should have the

opposite effect."  *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th

Cir. 2011).

The undersigned finds no compelling reason to disturb the ALJ's credibility

determination.  The ALJ found Sturgill's subjective complaints "not entirely

consistent" with the medical and other evidence in the record.  (Tr. 24).  In making

this determination, the ALJ compared her complaints with the medical evidence

regarding her cancer, shoulder impairment, right hand trigger finger, and low back

problems.  (Tr. 24-25).  Contrary to Sturgill's contention, the ALJ did address the

relevant factors in evaluating her symptoms under 20 C.F.R. § 404.1529(c)(3).

The ALJ discussed Sturgill's statements both in her function report and at the

hearing.[5]  (Tr. 24).  The ALJ also discussed her complaints of pain and the

treatment and medication she received for her conditions.  As discussed above, the

record does not indicate that she suffers from functional limitations beyond those

listed in the RFC due to her past history of cancer, right shoulder, and right trigger

finger issues, the latter two being controlled with injections and the former being in

remission and the record otherwise being devoid of functional limitations caused

by cancer treatment.  As to her low back impairments, as discussed, the treatment

records support her diagnoses and suggest some limitation, but they do not suggest

that she cannot perform light work with the limitations given in the RFC.

The ALJ's statement that, despite recommendations to the contrary,

Sturgill's refusal to undergo surgery on her back undermines her allegation of

disabling symptoms is somewhat concerning, but if error it is harmless error.   In

general, it is appropriate for the ALJ to consider a claimant's treatment (other than

medication) in evaluating his or her symptoms and pain, *see* 20 C.F.R. §

404.1529(c)(3)(v), and a claimant must follow prescribed treatment in order to

obtain benefits absent good reason.  *See* 20 C.F.R. § 404.1530.  Sturgill's physician

only recommended the back surgery, and those treatment records do not say why

---

[5] The ALJ did not discuss all of her hearing testimony or function report statements.  This is not error.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotation marks omitted).

she refused surgery other than to indicate her election to undergo further injections and physical therapy.  In this instance, it would have been appropriate for the ALJ to inquire as to why she declined surgery.  *See Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 507 (6th Cir. 2013) (citing *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.").  However, as the *Johnson* court noted, the presence of such an error can be harmless.  *Id.*  Where, as here, an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it.  The undersigned suggests that the ALJ's error here is harmless because substantial evidence supports the credibility determination, even disregarding her refusal to undergo surgery.  In light of the deference due to an ALJ's credibility determination, the undersigned finds that there is no compelling reason to disturb the determination.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 27, 2019                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge